### WILLIAM CARROLL ISAACS A/K/A BILLIE CARROLL ISAACS v. STATE OF MARYLAND

[No. 1015, September Term, 1975.]

*Decided June 7, 1976.*

The cause was argued before GILBERT, MENCHINE and MELVIN, JJ.

*John M. Robb, Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Lawrence V. Kelly, State's Attorney for Allegany County,* and *Robert W. Hamilton, Assistant State's Attorney for Allegany County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

William Carroll Isaacs, a/k/a Billie Carroll Isaacs, appellant, was convicted by a jury in the Circuit Court for Allegany County, presided over by Judge James S. Getty, of murder in the second degree, kidnapping, and larceny of a motor vehicle. Appellant was sentenced to sixty years imprisonment.[1]

On appeal to this Court, the appellant raises sixfold reasons why he believes the judgments of the circuit court should be reversed. He contends:

I. The indictment should have been dismissed because it was called to trial in violation of the Interstate Detainer Act, codified as Md. Ann. Code art. 27, §§ 616A-R;

II. He was denied his Sixth Amendment right to a speedy trial;

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, September 14, 1976.

1. We observe that appellant has also been sentenced in the State of Georgia to terms totaling forty years for crimes committed in that State. It is not clear whether the appellant is now confined in Maryland or Georgia.

III. Maryland lacked jurisdiction over the kidnapping and larceny charges because the events underlying those charges occurred in Pennsylvania;

IV. Testimony relative to " . . . unrelated offenses in Baltimore County" was erroneously admitted into evidence;

V. The verdict of murder in the second degree was illegal.

VI. The evidence was insufficient to sustain the convictions.

The record reveals that appellant, in the company of his brother, Carl Isaacs, his half-brother, Wayne Coleman, and another person named George Dungee, decided to go to Mexico. At that time, Coleman and Dungee were escapees from the Maryland correctional system. Prior to their supposed departure, they burglarized the home of a relative and other dwellings in Maryland and Pennsylvania. In addition to the burglaries, they engaged in stealing automobiles for their personal use. Two young girls, juveniles, accompanied the males on the crime spree although it does not appear that they were active participants in the commission of the criminal deeds. The two girls were abandoned by the four men in Pennsylvania. In McConnellsburg, Pennsylvania, on May 9 or 10, 1973, the men stole a white pick-up truck because the car they were using had motor trouble. The quartet had difficulty with the truck, and while they were endeavoring to fix it, Richard Wayne Miller, a McConnellsburg high school student, drove into view. Mr. Miller recognized the truck as belonging to someone he knew. Miller stopped his automobile and told the men to return the truck to the place from which it had been taken. The response was that Miller was held, at gun point, and forced into his own car, which the four culprits commandeered. They took an unspecified sum of money from Miller's wallet. The vehicle containing the five persons, including Miller, was driven into Maryland. Miller was led from the vehicle and taken into a wooded area where he was

slain. The four outlaws went to Florida. From there they journeyed to Georgia where a number of persons were murdered, and at least one woman was raped and then killed. Leaving Georgia, the culprits fled to West Virginia where they were eventually arrested. They were returned to Georgia for trial where Carl Isaacs, Coleman and Dungee were sentenced to be executed. Appellant, as we have stated in note 1 *supra,* was sentenced to a lengthy term of imprisonment in Georgia.

When the appellant was apprehended in West Virginia, he, after being advised of his *Miranda* rights, made an inculpatory statement in which he readily acknowledged his participation in the murder of Robert Wayne Miller. A similar statement, following renewed *Miranda* rights admonitions, was made to the Georgia authorities. Appellant, in his subsequent statement to the Maryland officials, recanted his West Virginia and Georgia statements. Specifically, he denied any prior knowledge of the plan to murder Miller and stated that he did not even know that Miller had been slain until the capture of himself and his companions in West Virginia. Appellant repeated the same version of the events when he was called upon to testify in his own defense at the trial in the instant case.

We shall discuss each contention posed to us by the appellant in the order in which he posits them.

## I.

Maryland Ann. Code art. 27, § 616D, provides that whenever a person, serving a term of imprisonment in a State that is a signatory to the Interstate Detainer Act, invokes the statutory rights conferred by the Act, he shall be brought to trial within one hundred and eighty (180) days " . . . after he shall have caused to be delivered to the prosecuting officer and the appropriate court . . . " a written notice of his imprisonment and the place wherein he is confined and makes a " . . . request for a final disposition . . . of the [pending] indictment, information or complaint . . . . "

§ 616D (a) provides further:

" . . . The request of the prisoner shall be

accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the [S]tate parole agency relating to the prisoner."

An examination of the record now before us discloses that appellant, through the "University of Georgia, School of Law, Legal Aid and Defender Society, Prisoner Legal Counseling Project, Georgia Diagnostic Center, Department of Corrections, Jackson, Georgia," under date of November 25, 1974, inquired whether there were " . . . any indictments, charges, or detainers pending against . . . " appellant in Allegany County. The inquiry stated that appellant " . . . believes he was indicted on October 3, 1973 for Murder, Kidnapping, Armed Robbery and Auto Theft." The State's Attorney for Allegany County responded, in writing, that there were indeed indictments pending against appellant and that copies of the indictments had been served on the appellant.

A paper writing entitled "Demand by Accused for Trial," dated December 9, 1974, and subscribed by appellant, was received by the Clerk of Court on December 16, 1974. The "Demand" reads as follows:

"Defendant . . . makes this his demand for trial and asks that the Court allow this demand and that the same be placed upon the minutes, and that he be tried at this term or at the next term of this Court, or in default of such trial that he be fully acquitted and discharged of said offense."

The State's Attorney replied to the appellant and the "Prisoner Legal Counseling Project" who had drafted the above quoted "Demand," that ". . . Georgia and Maryland are both signatories of the Interstate Detainer Act and it would be my opinion that in order for the request [for trial]

to be effective, that [the] statute must be complied with." Compliance with the Act, art. 27, § 616D (a), was not accomplished until April 9, 1975.

On August 19, 1975, appellant filed a motion to dismiss based on his not being tried within one hundred and eighty (180) days. The State's Attorney, Lawrence V. Kelly, testified at the hearing on the motion to dismiss. Mr. Kelly informed the hearing judge of the facts that we have heretofore recited concerning the Interstate Detainer Act, and, further, that he had traveled to Georgia in March, 1974, in an effort to prevail upon Georgia authorities to relinquish temporary custody of appellant so that he could be tried in Maryland on the pending charges. The Georgia Attorney General told Kelly that, as the Attorney General, he would advise the Governor of that State that it would be in the best interests of Georgia not to let the appellant out of the jurisdiction of the State. It was not until May 1, 1975, that Georgia formally agreed to deliver temporary custody of the appellant to the State of Maryland for trial on the charges for which appellant had been indicted in October, 1973.

Md. Ann. Code art. 27, § 616J, mandates that the Interstate Detainer Act " . . . shall be liberally construed so as to effectuate its purposes." The purposes are, in turn, spelled out with clarity in § 616B:

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party states also find that proceedings with

reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

The Court of Appeals, in *State v. Barnes*, 273 Md. 195, 328 A. 2d 737 (1974), *aff'g Barnes v. State*, 20 Md. App. 262, 315 A. 2d 117 (1974), speaking through the late Judge William J. O'Donnell, opined, 273 Md. at 208, that both the Interstate Act and the Intrastate provisions " . . . were common in derivation and purpose, were remedial in nature, designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good; as such they are to be liberally construed in order to advance the remedy and obviate the mischief."

The phrase "liberally construed" does not, however, mean that courts are free to bend the legislation out of shape or to remold it to some other form. We think the provision of § 616D (a), that "[t]he request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner . . ." containing the information specified in the statute, is mandatory and not directory. We believe the Legislature so provided because the appropriate State's Attorney would then be in a position to evaluate whether the nature of the charges pending against the accused was of such a severe degree as to merit further trial in this State in the light of the sentence then being served in the other state that was a party to the interstate agreement. If the State's Attorney was of the opinion that the best interests of the people of Maryland lay in pursuing the matter, he could request the production of the accused for trial. On the other hand, if the sentence the prisoner was serving in the other state were such that bringing the accused to trial in Maryland would serve no useful purpose, he could allow the one hundred and eighty (180) day period to lapse, thus, terminating the matter. From the record in the case now before us, it is manifest that the State's Attor-

ney held the belief that the indictments against appellant, when weighed against the Georgia sentence, necessitated appellant's trial in Maryland.

It is apparent that appellant did not comply with the unambiguous terms of the Act. We reiterate what Judge Orth (now Chief Judge) wrote for this Court in *King v. State*, 5 Md. App. 652, 249 A. 2d 468 (1969):

" . . . Even on an assumption that the letter of 15 September 1967 was such request [for trial], and that it was filed on time, it was not accompanied by a statement from the warden containing the information required by the Act. The Act was not available to the appellant for that reason. And even if the evidence before the court be considered as showing that the appellant was precluded from filing the request as required because the warden, although he had knowledge, did not inform the appellant of the source and contents of the untried complaints and of the appellant's right to request final disposition thereof, [footnote omitted] no relief was available to the appellant under the Act. And even had the evidence proved that the appellant made request as required but that the warden failed to deliver it, accompanied by the statement, to the appropriate State's attorney and the court, no relief was available to the appellant under the Act. In short, for reasons we have herein before stated, *since it was not established that the appellant and the prison officials did all that they were called upon to do by the provisions of the Act, the Act was not invoked, no matter where the fault lay.*" 5 Md. App. at 665-66. (Emphasis supplied).

While *King* was concerned with an intrastate detainer, the rationale is applicable to interstate detainers as well. The "Demand by Accused for Trial" did not comply with the Act. The information required by § 616D (a) was not supplied, and no certificate of the official having custody of the appellant accompanied the "Demand." Even after the State's

Attorney invited appellant's attention to the deficiency in the "Demand," there was no compliance with the Act until approximately four months later. The one hundred and eighty (180) day period in which an accused out-of-state prisoner must be tried did not begin to run until there was full compliance with the Act. *Davidson v. State*, 18 Md. App. 61, 67, 305 A. 2d 474, 479 (1973). We think *Wise v. State*, 30 Md. App. 207, 351 A. 2d 160 (1976), and *Davis v. State*, 24 Md. App. 567, 332 A. 2d 733 (1975), relied upon by appellant, to be inapposite as both are concerned strictly with compliance with the notice provisions of the Intrastate Act, art. 27, § 616S. Furthermore, a State's Attorney of Baltimore City or a Maryland county is able to learn quickly the status of a Maryland incarcerated inmate, but ascertaining information about an out-of-state prisoner is not always easily accomplished, moreover, Maryland is unable to proceed where, as here, the matter is delayed by the unwillingness of the State having custody of the prisoner to relinquish, even temporarily, that custody. In our view, Judge Getty correctly denied appellant's motion to dismiss.

## II.

Citing the Sixth Amendment to the Constitution of the United States and Article 21 of the Declaration of Rights, Maryland Constitution, appellant asserts that the indictment against him should have been dismissed on the ground that he was denied a speedy trial.

In *Davidson v. State*, 18 Md. App. at 70, Judge Carter stated:

> "This Court has repeatedly held that only the portion of the total delay period which is fairly attributable to this State is to be considered in determining the 'length of delay' factor [under *Barker v. Wingo*, 407 U. S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972)]. See *State v. Dubose*, 17 Md. App. 292, 295, 301 A. 2d 32 [,34 (1973)]; *State v. Lawless*, 13 Md. App. 220, 230, 283 A. 2d 160 [,168-69 (1971)]; *Smith v. State*, 11 Md. App. 631,

634, 276 A. 2d. 228 [, 230 (1971)]; *King v. State*, 5 Md. App.. 652, 667, 249 A. 2d 468 [, 477 (1969.)]."

We have previously observed that the appellant was indicted in Allegany County on October 3, 1973. The starting point for the consideration of the delay factor of *Barker* began at that time. *See State v. Hunter*, 16 Md. App. 306, 311, 295 A. 2d 779, 782 (1972), where we held:

"... [I]n order to calculate a constitutionally proscribed delay in bringing a matter to trial, we must look back to the date of the commencement of a prosecution by way of arrest, warrant, information or indictment, whichever shall first occur, and then forward to the date of the trial or hearing."

*See also Evans v. State*, 28 Md. App. 640, 349 A. 2d 300 (1975).

The appellant, however, was dehors the jurisdiction of the State of Maryland. This State's jurisdiction over him was not gained until he and the custodial State had complied with the Interstate Detainer Act, thereby waiving extradition and consenting " ... to the production of his body ... " in the Circuit Court for Allegany County. Md. Ann. Code art. 27, § 616D (e). Manifestly, appellant cannot avail himself of *Barker* and its progeny, when it is he, by his criminal acts in another State, or his wilful absence from Maryland, which prevented this State from proceeding with the trial. Under the rationale of *Davidson, supra,* the appellant is chargeable with any delay in the trial, accounting from October 3, 1973, the date of indictment, running to April 9, 1975, the date when there was compliance with the Interstate Detainer Act.

The appellant went to trial on September 15, 1975, a period of five months and six days subsequent to compliance with the Act. Such a delay, under the circumstances, in our view, is not of constitutional dimension and neither *Barker* nor *Hunter* dictate a reversal under the facts of this case. We further observe that the delay, even though occasioned

by appellant's own misdeeds and failure to follow the procedural law, apparently did not create any hardship on or prejudice the appellant. No diminution of memory was claimed, no loss of witnesses was alleged, and no averment of denial of parole or other disadvantage was asserted. We think appellant's claim of a denial of a speedy trial to be devoid of merit.

## III.

The testimony established that the initial taking of Miller's car and the kidnapping commenced in Pennsylvania. The four kidnappers, forcibly accompanied by their victim, then drove in the stolen car into Maryland, where as we have already said, Robert Wayne Miller was killed.

Then Md. Ann. Code art. 27, § 337, provided:

> "Every person, his counsellors, aiders or abettors, who shall be convicted of the crime of kidnapping and forcibly or fraudulently carrying or causing to be *carried out of or within this State any person*, except in the case of a minor [2], by a parent thereof, with intent to have such person carried out of or within this State, or with the intent to have such person concealed within the State or without the State, shall be guilty of a felony and shall be sentenced to death [3] or to the penitentiary for not more than thirty years, in the discretion of the court." (Emphasis supplied).

The Maryland statute makes clear that the asportation of a kidnapped person into or through the geographical

---

2. By Laws 1973, ch. 651, § 13, deleted the adjective "minor" and substituted the phrase "person under eighteen years of age."

3. We pointed out in McLaughlin v. Warden, 16 Md. App. 451, 298 A. 2d 201 (1973), that Furman v. Georgia, 408 U. S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), and Bartholomey v. State, 267 Md. 175, 297 A. 2d 696 (1972), had effectively eliminated the death penalty except in those cases wherein capital punishment is the *only* penalty that may be prescribed. At the time of the commission of the kidnap-murder of Robert Wayne Miller, the death penalty was not viable in Maryland. By Laws 1975, ch. 252, § 1, the death penalty has been made mandatory whenever the kidnap victim is killed by the abductors. Ch. 252 was effective July 1, 1975, and applies prospectively.

confines of this State constitutes the violation of Md. Ann. Code art. 27, § 337. The prosecution need but show beyond a reasonable doubt that the victim was forcibly carried into Maryland. Once that is established, the statute is satisfied, and it matters not that the victim was asported but a short distance. *Moore v. State*, 23 Md. App. 540, 329 A. 2d 48 (1974); *State v. Ayers*, 198 Kan. 467, 426 P. 2d 21 (1967). *See also* R. Perkins, *Criminal Law* ch. 2, § 7, at 177 (2d ed. 1969). It is patent in the case at bar that the State met its burden and demonstrated that the appellant had violated then Md. Ann. Code art. 27, § 337.

Appellant's argument that the larceny of Miller's vehicle occurred in Pennsylvania so that Maryland lacked jurisdiction is devoid of merit. As far back as 1882, the Court of Appeals held, in *Worthington v. State*, 58 Md. 403 (1882):

" . . . When a person steals goods in another State and brings them into this, the person stealing them cannot be indicted and punished here for the crime committed in the former State, for one State cannot enforce the criminal laws of another, *but the act of bringing such stolen goods into this State is . . . a new larceny*, for which the party may be indicted in the courts of this State and punished." 58 Md. at 409. (Emphasis supplied).

This Court has consistently followed *Worthington*. *See Hamilton v. State*, 12 Md. App. 91, 277 A. 2d 460 (1971); *Lehr v. State*, 2 Md. App. 776, 237 A. 2d 529 (1968); *Gamble v. State*, 2 Md. App. 271, 234 A. 2d 158 (1967).

## IV.

Appellant contends it was error for the trial judge to allow into evidence the testimony of a young girl who, prior to the kidnapping of Miller, had accompanied the Isaacs, Coleman, and Dungee during their unlawful escapades in Baltimore County and in Pennsylvania. Appellant raises the rhetorical question: "How could the offenses in Baltimore County show a pattern or intent to kidnap, rob and murder Richard Miller . . . ?"

Appellant's argument overlooks the fact that he was also charged with automobile larceny, a crime for which he was convicted. There was testimony that appellant had acted as armed look-out and, on one occasion, sought permission to shoot a woman who interrupted the theft of some gasoline.

The rule with reference to the admission of evidence of other crimes, set out in *Cothron v. State*, 138 Md. 101, 110, 113 A. 620, 624 (1921), quoting with approval from *State v. Hyde*, 234 Mo. 200, 136 S. W. 316 (1911), is:

> " . . . [E]vidence of other crimes . . . [is admissible] 'to prove the specific crime charged when it tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of a crime on trial.' "

*See also Wentz v. State*, 159 Md. 161, 150 A. 278 (1930); *Mollar v. State*, 25 Md. App. 291, 333 A. 2d 625 (1975); *Avery v. State*, 15 Md. App. 520, 292 A. 2d 728 (1972); *Gordon v. State*, 5 Md. App. 291, 246 A. 2d 623 (1968).

It is not required that the offered evidence meet each of the five *Hyde* exceptions. We have permitted, in a number of cases, evidence to be introduced when based on one or more of the exceptions. *See Mollar v. State, supra; Gordon v. State, supra; Jones v. State*, 4 Md. App. 445, 243 A. 2d 44 (1968); *Thomas v. State*, 3 Md. App. 708, 240 A. 2d 646 (1968); *Gilchrist v. State*, 2 Md. App. 635, 236 A. 2d 299 (1967); *Loker v. State*, 2 Md. App. 1, 233 A. 2d 342 (1967); *Gorski v. State*, 1 Md. App. 200, 228 A. 2d 835 (1967).

We think the challenged testimony in the case *sub judice*, falls within the rule by establishing: (1) "intent," (2) "absence of mistake or accident," and (3) "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other."

## V.

Appellant's assertion is that the jury verdict is "illegal" because the evidence manifested that he was guilty of first degree murder, *i.e.*, felony-murder, as a principal in the second degree, or " . . . as an accomplice to felony-murder . . . ." In short, appellant argues the old adage of "all or nothing." [4] We do not, however, see it that way. The jury may have, in the words of Judge Moylan in *Burko v. State*, 28 Md. App. 732, 735, 349 A. 2d 355, 357 (1975), " . . . returned a legally illogical verdict of guilty of murder in the second degree, although the undisputed evidence clearly established, if it established any crime at all, a case of first-degree murder based upon the combination of felony-murder doctrine and Article 27, § 410," but that "legally illogical verdict" is not defective.

Under the Maryland Constitution article XV, § 5, a jury, in a criminal case, is the judge of the law as well as the fact. The constitutionality of the Article has been upheld in a series of cases. *Giles v. State*, 229 Md. 370, 183 A. 2d 359 (1962); [5] *Slansky v. State*, 192 Md. 94, 63 A. 2d 599 (1949); *Burko v. State*, 19 Md. App. 645, 313 A. 2d 864 (1974); *Wilkins v. State*, 16 Md. App. 587, 300 A. 2d 411 (1973), *vacated on other grounds*, 422 U. S. 1003, 95 S. Ct. 2624, 45 L.Ed.2d 667 (1975); *Avey v. State*, 9 Md. App. 227, 263 A. 2d 609 (1970); *Lewis v. State*, 2 Md. App. 678, 237 A. 2d 73 (1968); *Avey v. State*, 1 Md. App. 178, 228 A. 2d 614 (1967); *Wyley v. Warden*, 372 F. 2d 742, 744 (4th Cir. 1967). *See also Jones v. State*, 29 Md. App. 182, 348 A. 2d 55 (1975), *cert. granted*, 277 Md. 738 (Ct. App. March 4, 1976).

---

4. Henrik Ibsen, *Brand* (1866).

5. The Supreme Court in Giles v. Maryland, 372 U. S. 767, 83 S. Ct. 1102, 10 L.Ed.2d 137 (1963), dismissed an appeal for want of a substantial federal issue that raised the constitutionality, by federal standards, of Article XV, § 5. In Brady v. Maryland, 373 U. S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), *affirming* Brady v. State, 226 Md. 422, 174 A. 2d 167 (1961), the Court noted that " . . . 'the Judges of Law' does not mean precisely what it seems to say" pointing out that judges render advisory instructions and rule on the evidence. 373 U. S. at 89. Moreover, the trial judge may grant a judgment of acquittal on motion of counsel or on its own motion at the close of the State's case or at the end of the evidence. Md. Rule 755b and c.

Whether the verdict represented a compromise on the part of the jurors because of some intangible factors, or the jurors extended some consideration to the appellant because of his youth, in view of their knowledge that he already had been sentenced to forty (40) years imprisonment in Georgia, we cannot say. We do note that the trial judge advised the jury of the possible punishments for the various offenses. To what extent, if any, that advice dictated the verdict, we cannot speculate.

As our law now stands, the jury, subject to the qualification mentioned in note 5 *supra*, is the judge of the law and fact. As such, they exercised their prerogative and rendered their verdict. We perceive no error.

## VI.

Whenever a question of sufficiency of the evidence is raised, the function of an appellate court is to review the record and determine whether the evidence was sufficient to sustain the conviction. *Iozzi v. State*, 5 Md. App. 415, 247 A. 2d 758 (1968); *Bever v. State*, 4 Md. App. 436, 243 A. 2d 634 (1968). To be insufficient in law to sustain the conviction, the record must demonstrate that there was no legally sufficient evidence or inferences rationally drawable therefrom upon which a jury could conclude that the accused, beyond a reasonable doubt, did, in fact, commit the crime alleged. *James v. State*, 14 Md. App. 689, 288 A. 2d 644 (1972); *King v. State*, 14 Md. App. 385, 287 A. 2d 52 (1972).

In the instant case, the jury had before it the testimony of Grover T. Martin, a special agent of the Federal Bureau of Investigation. Mr. Martin related that May 18, 1973, after he had fully apprised appellant of the *Miranda* rights, the appellant indicated that he " . . . would like to make a statement." Appellant told the agent that Richard Wayne Miller was ordered into Miller's own vehicle and the car was driven " . . . to the western part of Maryland" from somewhere in Pennsylvania. " . . . Carl Isaacs held a gun on him . . . ." After " . . . an hour and a half [or] . . . two hours . . ." the car stopped. " . . . Wayne Coleman and he, Billy

Isaacs, got out of the car." Appellant " . . . indicated that he got a shirt that he was going to utilize to tie up Mr. Miller . . . ." Coleman, appellant, and Mr. Miller went into the woods. Coleman ordered Miller to lie " . . . face down on the ground and that . . . Coleman told him [appellant] to leave the area." Appellant narrated to the agent that " . . . he turned around and he saw Wayne Coleman shoot the Miller man in the head one time."

The appellant, while in the custody of the Georgia authorities made a second statement. It, too, was given after the full panoply of *Miranda* had been extended to appellant. According to Ronald E. Angel, an investigator for the Georgia Bureau of Investigation, appellant said:

> "[H]e was in the company of George Elder Dungee, Carl Isaacs and Wayne Coleman; that they had left from the State of Maryland and had proceeded into McConnellsburg, Pennsylvania; that they were in the process of trying to correct some mechanical trouble that they were having with vehicles by hot wiring the truck; that the truck had additionally gave them mechanical troubles; and in the process of trying to correct these problems that a young white male in a '68 Chevrolet automobile approached them about their fooling with this automobile or this truck as to why they were around that vehicle; and that they took this young male into their custody, placed all of the personal belongings that they had in his vehicle, and required him to get into the vehicle with them by force, with the show and display of weapons; and that they kept this young white male in their custody for at least an hour or longer; that they proceeded into the State of Maryland. He recalled going into the State of Maryland by seeing a road sign displayed saying, "Welcome to Maryland". And shortly after entering the State of Maryland, that they pulled off onto a logging road, parked the vehicle; that he and Wayne Coleman took the Miller

boy from the vehicle, again with the force and display of firearms; that Billy was carrying a .38 caliber pistol, and that Coleman was carrying what he referred to [as] a .45 caliber automatic pistol; that they took the young white male into the woods; they took a shirt that they were going to — according to Billy — were going to tie the man up with; they forced him to lie down in the woods face down, removed his wallet from him; and that Wayne Coleman shot him one time in the back of the head while he was lying on the ground face down."

Appellant, both in his statement to the Maryland authorities and at the trial, denied that he knew Miller was to be murdered or that he was present at the time Miller was shot by Coleman. When queried by Maryland authorities as to why he had told the F.B.I. agent and the Georgia investigator substantially the same versions, both of which clashed with that given to the Maryland investigators and to the jury, appellant replied that he was scared when he talked to the special agent and the Georgia investigator.

A reading of the above quoted testimony of Mr. Martin and Mr. Angel would entitle a jury to infer that appellant was a knowing participant in the murder and kidnapping of Miller as well as a principal in the larceny of Miller's motor vehicle.

Not only was the jury not required to believe the appellant's exculpatory narration of supposed facts, but they could reasonably infer that his in-court recitation was calculated to evade responsibility, and that the first two statements were, in fact, correct.

We think Judge Getty properly denied the motion for judgment of acquittal.

*Judgments affirmed.*