STATE OF MARYLAND *v.* MAURICE WILLIAM DEAN

[No. 591, September Term, 1978.]

*Decided April 12, 1979.*

The cause was argued before MORTON, MELVIN and MASON, JJ.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General,* and *J. Owen Wise, State's Attorney for Caroline County,* on the brief, for appellant.

*John W. Sause, Jr., District Public Defender,* for appellee.

MELVIN, J., delivered the opinion of the Court.

In this appeal by the State, the single issue presented is whether the Circuit Court for Caroline County was correct

when it granted the appellee's motion to dismiss two felony charges against him on the ground that he was denied his constitutional right to a speedy trial — a right guaranteed by the Sixth Amendment to the Constitution and made applicable to the states through the Fourteenth Amendment. *See Klopfer v. North Carolina,* 386 U. S. 213, 222-226 (1967).

In reviewing the issue of whether one has been denied a constitutional right, such as the right to a speedy trial, we must make our own independent examination of the record as a whole and determine for ourselves whether the right has been denied. In speedy trial cases, the Supreme Court of the United States, in *Barker v. Wingo,* 407 U. S. 514, 530 (1972), identified four factors that courts should assess in determining the issue: (1) length of delay; (2) reason for delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant caused by the delay. In assessing these factors and the weight to be accorded them in a given case we engage in a difficult "balancing test, in which the conduct of both the prosecution and the defendant are weighed" *Id.* 407 U. S. at 530. *See Wilson v. State,* 281 Md. 640, 382 A. 2d 1053 (1978), *cert. den.,* 439 U. S. 839.

## Length of Delay

Both sides agree that the time clock began to run in this case on *June 18, 1976.* On that date three arrest warrants were issued by a Commissioner for the District Court of Caroline County charging the appellee, Maurice William Dean, with breaking and entering, grand larceny and receiving stolen goods. The hearing on Dean's motion to dismiss the charges was held in the Circuit Court for Caroline County on *June 5, 1978.* Trial on the merits had previously been scheduled for June 22, 1978. The State concedes, and we agree, that the time between June 18, 1976 and June 5, 1978 (slightly under two years) "in the instant case triggers further analysis so as to require this Court to engage in the prescribed balancing test".

## Reasons for the Delay

Different reasons for delay in prosecuting a defendant

should be assigned different weights. *Barker v. Wingo, supra,* 407 U. S. at 531; *Smith v. State,* 276 Md. 521, 528 (1975). In this regard the Court of Appeals has noted in *Jones v. State,* 279 Md. 1, 6-7 (1976):

"... [A] continuum exists whereby a deliberate attempt to hamper the defense would be weighed most heavily against the State, a prolongation due to the negligence of the State would be weighed less heavily against it, a delay caused by a missing witness might be a neutral reason chargeable to neither party, and a delay attributable solely to the defendant himself would not be used to support the conclusion that he was denied a speedy trial."

We now discuss the events between June 18, 1976 and June 5, 1978 and the circumstances surrounding those events so far as we can determine from the record before us.

On the morning of June 15, 1976, Corporal Donald H. Cox of the Maryland State Police was called to investigate a breaking and entering and grand larceny at the North Caroline High School, in Denton, Caroline County, Maryland. His investigation indicated that at least two unknown persons had broken into the school sometime after 3:10 P. M. the previous day and taken away various school band instruments valued at over $10,000.

On *June 18, 1976,* at 3:00 P. M., Corporal Cox received a call from a Wilmington, Delaware, police detective who informed him that earlier that day Delaware police had searched an automobile in Wilmington operated by Dean. The search of the automobile revealed numerous musical instruments matching the description of those stolen from North Caroline High School. The three Maryland arrest warrants were then issued by a Commissioner for the District Court for Caroline County. In the meantime, however, Dean had been charged by Delaware authorities with receiving stolen property (the musical instruments from North Caroline High School) and was being detained in Delaware awaiting disposition of that charge.

158

On *June 21, 1976,* Corporal Cox went to Wilmington with the Caroline High School Band Director and recovered the stolen property from the Wilmington Police Department. While there he contacted Dean who refused to waive extradition.

Sometime between *July 13 and July 30, 1976,* the State's Attorney for Caroline County initiated extradition procedures, pursuant to which the Governor of Maryland's requisition for Dean's return to Maryland was forwarded to the Governor of Delaware on July 30, 1976. See Md. Code, Art. 41, § 37 (1957, 1978 repl. vol.).

By letter dated *September 15, 1976,* Delaware authorities notified Maryland that Dean and one Gary Price had been indicted in Delaware on "a charge of receiving stolen property and conspiracy in the second degree", and that, "Due to the indictment ... we cannot allow either Mr. Price or Mr. Dean to be extradited." The letter stated that the Delaware trial was scheduled "within the next 30 days". The letter suggested that "you file a detainer with the Delaware State Correctional Center in Smyrna, Delaware."

On *September 21, 1976,* the State's Attorney, following the advice of Delaware, forwarded certified copies of the Maryland arrest warrants to the Delaware State Correctional Center as detainers.

On *September 22, 1976,* the detainers were returned to the State's Attorney by the Delaware Correctional Center with a letter informing him that, "Subject Dean was released from our custody July 29, 1976 ..." and suggesting that "your warrants be directed" to the Police Chief of Wilmington "for service".

On *September 28, 1976,* the State's Attorney wrote to a member of the Wilmington Law Department reciting his unsuccessful efforts to obtain Dean's return to Maryland. The letter ended plaintively: "Could you be of any assistance in telling us how to bring these men to trial in Caroline County?"

The reply from the Wilmington Law Department, dated *October 1, 1976,* was a suggestion that

"... you file Governor's warrants with the State

of Delaware, they will remain open for one year. If during that year the two men in question are acquitted or if a nolle prosequi is entered by the State in these matters, they will be immediately extradited. On the other hand, if they are convicted and sentenced to jail, you must then lodge a detainer against the two men.

"However, before you take any of these steps, I suggest that you contact Richard McMahon, Deputy Attorney General, Justice Department, State of Delaware, Wilmington, Delaware. Mr. McMahon will know the exact status of the two men and thus will be able to give you more information upon which you can base your decision."

On *November 1, 1976,* the State's Attorney wrote to the Maryland Secretary of State's office stating:

"Several months ago our office submitted Extradition Papers on the above named two persons. Said Extradition Papers were returned to your office by the State of Delaware.

"There has now been a disposition of the charges against them in the State of Delaware. So that our rights under the Interstate Detainer Act are not compromised, would you please re-submit the Extradition Papers on the above named two Defendants for their return to the State of Maryland for trial."

The record does not disclose when the extradition papers were resubmitted to Delaware, but apparently it was sometime prior to *February 4, 1977,* for on that date the Delaware Department of Justice wrote to the State's Attorney for Caroline County stating in pertinent part: "Your requisition is being held in abeyance per further developments". Other than this cryptic message there is no further explanation in the record of the status of the Delaware extradition proceedings or of the disposition of the Delaware charges against Dean. The record reveals no

further communication from Delaware concerning Dean. Nor does the record reveal any further inquiry from Maryland to Delaware concerning him.

On *September 12, 1977,* Dean voluntarily returned to Maryland "to see my people" and was arrested and detained in Queen Anne's County on separate charges pending against him in that county. He testified at the dismissal hearing that prior to that time, between June 18, 1976 and September 1977, he was living "the entire time in Wilmington, Delaware". He said that the Sheriff of Queen Anne's County informed him at the time of his arrest that there were also "warrants for my arrest from Caroline County". He said he then contacted the Public Defender's Office "to ask for a faster speedy trial on the charges that was supposed to be pending on me in Caroline County".

On *September 20, 1977,* the State's Attorney of Caroline County forwarded to the Queen Anne's County Jail "Arrest Warrants issued in this County" for the appellee, Maurice William Dean, with the request that they "be filed as Detainers against the Defendant".

Presumably, proceedings were then had against Dean in Queen Anne's County on the charges pending against him there.[1]

On *December 21, 1977,* Dean was served with new warrants issued *December 14, 1977,* re-charging him with breaking and entering, grand larceny and receiving stolen property, all in connection with the North Caroline High School incident that occurred on June 15, 1976. These new warrants were apparently issued because of the uncertainty of whether the original warrants had ever been served on the defendant and to allay any misapprehension that the Caroline County charges were not still open against Dean.

---

1. The State's brief tells us that according to docket entries in Queen Anne's County, Dean was indicted in Queen Anne's County on *October 3, 1977;* trial was held on those charges on *December 20, 1977,* resulting in guilty findings of daytime housebreaking with intent to steal and grand larceny; and that on *February 10, 1978,* Dean was sentenced to 10 years on each charge, to be served concurrently. Although there is nothing in the record before us to substantiate these statements, Dean's brief does not controvert them in any way or object to the inclusion of this information in the State's brief.

Dean requested a preliminary hearing on the three charges (all felonies) "in accordance with Maryland District Rule 727". The preliminary hearing was held on *February 21, 1978,* eleven days after he was sentenced on the Queen Anne's County charges (see note 1, *supra*). The preliminary hearing resulted in a finding of probable cause.

Thereafter, pursuant to Maryland Rule 727 i, the State's Attorney filed a two-count information against Dean on *March 15, 1978.*

On *April 26, 1978,* Dean filed a motion to dismiss on the ground, *inter alia,* that he "has been denied his right to a speedy trial". Previously, on April 18, 1978, the case had been scheduled for trial on June 22, 1978.

After a hearing on *June 5, 1978,* the court granted the motion.

It will be seen that the chief cause of the two year delay in this case was the defendant's absence from the State during the 18 months period from June 18, 1976 to September 12, 1977. Citing *Isaacs v. State,* 31 Md. App. 604 (1976), the State would charge that entire 18 months delay to the defendant. In *Isaacs,* at 614, we said: "Manifestly, appellant cannot avail himself of *Barker* and its progeny, when it is he, by his criminal acts in another State, or his wilful absence from Maryland, which prevented this State from proceeding with trial." In *Isaacs,* we further said the defendant, who had been arrested and sentenced for another crime in another State, was "chargeable with any delay" in his Maryland trial while he was "dehors the jurisdiction of the State of Maryland" "until he and the custodial State had complied with the Interstate Detainer Act, thereby waiving extradition and consenting '. . . to the production of his body . . .' in the Circuit Court for Allegany County, Md. Ann. Code art. 27, § 616 D (e)."

In relying upon the above quoted language in *Isaacs* as "dispositive" of this appeal, we think the State reads it out of context with the facts of that case. [There was evidence that the State's Attorney for Allegany County had attempted, unsuccessfully, to secure temporary custody of the defendant from the State of Georgia]. Nevertheless, upon further

reflection and in view of the more recent Court of Appeals opinion in *Wilson v. State,* 281 Md. 640 (1978), we now think the above quoted language in *Isaacs* may be too broad. In *Wilson,* the Court of Appeals, in an opinion by Judge Orth (formerly Chief Judge of this Court), affirmed this Court's reversal of the trial court's dismissal of criminal charges on speedy trial grounds. In doing so, however, the Court emphasized "that '[a] defendant has no duty to bring himself to trial; the State has that duty ... *'Barker v. Wingo .... It follows, therefore, that the State may not excuse delay in bringing an accused to trial merely because he is incarcerated for other offenses in this or other jurisdictions". Id.* at 642 (emphasis supplied). It would seem, therefore, that an accused incarcerated in another state is not required to invoke the provisions of the Interstate Detainer Act (Art. 27, § 616 D) as a condition precedent to preserving his claim to a denial of his speedy trial rights guaranteed by the Sixth Amendment to the Constitution of the United States. The mere fact that he does not invoke the Act's provisions does not of itself warrant attributing him with delay in his Maryland trial. This is so because there are provisions in the Act that enable the State to obtain custody of the accused irrespective of whether the accused himself initiates any of its provisions.[2]

Nor does the mere fact that an accused, although not incarcerated, voluntarily remains beyond the jurisdiction of the State necessarily mean that any resulting delay in his trial should be attributed to him and not the State. Here again there are provisions in the law (extradition proceedings) designed to enable the State to bring the accused to trial.

To summarize, where the accused is beyond the jurisdiction of the trial court, whether incarcerated or not, proper assessment of the "cause of delay" factor in the balancing process depends on the facts and circumstances of the particular case — and not merely on the fact that he is absent, voluntarily or otherwise.

In the present case, the hearing judge said:

".... From the exhibits that have been introduced

---

2. See Md. Code (1957, 1976 Repl. Vol.), Art. 27, § 616F (b) (2).

by Mr. Wise, as well as the exhibits that are introduced by the Defendant, it appears that Mr. Wise, as the prosecutor for Caroline County, has done everything that is reasonable for a prosecutor to do in an effort to bring Mr. Dean to trial on the charges that arose back in June of 1976".

The judge felt, however, that the State's Attorney should have presented the matter to the Caroline County grand jury in November of 1976 or April of 1977. [The grand jury in Caroline County meets in November and April of each year]. If this had been done and an indictment filed, the judge opined that the case would have "gotten in shape immediately to proceed" without the further delay occasioned by the preliminary hearing procedures in the District Court after Dean had been detained in Queen Anne's County.

We take a somewhat different view concerning the State's efforts to bring Dean to trial. We agree that the period *June 18, 1976* through *February 4, 1977,* a period of 7½ months, should not be chargeable to the State, for the record is clear that for at least that period of time the State of Delaware refused to release Dean to Maryland for trial. The record is silent concerning any efforts by the State to obtain custody of Dean from Delaware during the 7¼ months from *February 4, 1977* to *September 12, 1977,* the date of his voluntary return to Maryland. There is no indication in the record that during this period Dean was elsewhere than at his known residence in Wilmington, Delaware. If the State made further efforts or even inquiries concerning his status in Delaware during this period, the record does not reflect them. We think this time therefore should be charged to the State. There is, however, no evidence whatever that the delay was "a deliberate attempt to hamper the defense" *(see Jones v. State, supra).* At worst, in the circumstances, we think it falls in the category of negligence by the State and is "weighed less heavily against it". *Id.* at 6-7.

Once Dean was apprehended in Queen Anne's County, we think the State's Attorney for Caroline County acted with reasonable dispatch and well "within the requirements of

orderly procedure". *Epps v. State,* 276 Md. 96, 112 (1975). One week after his arrest in Queen Anne's County, detainers were filed against him regarding the Caroline County charges. The day after his trial in Queen Anne's County on *December 21, 1977,* new warrants were served upon him there and a preliminary hearing scheduled for *February 7, 1978,* which was changed to *February 21, 1978,* at his counsel's request. After the preliminary hearing resulted in a finding of probable cause and within the time required by Maryland Rule 727 i, the two-count information against Dean was filed on *March 15, 1978* in the Circuit Court for Caroline County. On *April 18, 1978,* the case was scheduled for trial on *June 22, 1978,* slightly more than 3 months after the information against him was filed.

We do not agree that the State should be charged with any delay that may have resulted from its election not to have Dean indicted by the Grand Jury before his return to Maryland. It is undoubtedly true that the preliminary hearing procedure did result in some delay in scheduling the case for trial on its merits. On the other hand, it was Dean himself who invoked his right to a preliminary hearing (including a postponement of the hearing date). Although the time involved in following this procedure should not be chargeable to Dean, neither should it be chargeable to the State.

### Defendant's Assertion of his Right

In *Barker v. Wingo, supra,* 407 U. S. at 531-532, the Supreme Court said:

> "The defendant's assertion of his speedy trial right then is entitled to strong evidentiary weight in determining whether the defendant is being deprived of his right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

The record reflects that by *December 21, 1977,* the State's Attorney for Caroline County was aware that Dean had told the Public Defender's Office to ask for a speedy trial. No formal motion was filed, however, until *April 26, 1978* and

that was not a motion for speedy trial but a motion to dismiss for, *inter alia,* denial of his right to a speedy trial.

The Court in *Barker* further said: "Whether and how a defendant asserts his right is closely related to the other factors . . . ." *Id.* 407 U. S. at 531-532.

### Prejudice to the Defendant

The trial judge found no actual prejudice to Dean resulting from the delay ["And with respect to the prejudice thing, there has been no actual prejudice shown"]. Upon our independent review, we agree.

"Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. [The Supreme Court] has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired". *Barker v. Wingo, supra* at 532.

#### (i)

With respect to Dean, there is no evidence that he suffered any pre-trial incarceration as a result of the Caroline County charges.

#### (ii)

Dean testified at the dismissal hearing that while he was still in Delaware resisting extradition to Maryland, he was told by his attorney there, on September 15, 1976, that the Maryland charges had been "dropped", and that he did not become aware of this erroneous advice until his return to Maryland a year later in September 1977. During this period he said ". . . there wasn't anything to worry about". In the circumstances, we assess the "anxiety and concern" interest identified in *Barker* as insignificant in the context of Dean's speedy trial rights.

#### (iii)

There is no evidence that the defense was impaired in any way by the delay.

### The Balancing Process

In applying the balancing test by assessing the four factors set out in *Barker,* we conclude, after our mandated independent review of the record as a whole, that Dean was not denied his right to a speedy trial. What we said in *State v. Dubose,* 17 Md. App. 292, 299-300 (1973) applies here:

> "The Supreme Court said in *Beavers v. Haubert,* 198 U. S. 77, 87, and affirmed in *Barker,* at 522:
>
>> 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.'
>
> Justice is supposed to be swift but deliberate. *United States v. Ewell,* 383 U. S. 116, 120. The action of the trial court in the circumstances shown by the record was not necessary to secure [the defendant's] rights, but did preclude the rights of public justice, because it meant that [the defendant] charged with a serious crime, went free without being tried. It is patent that the severe remedy of dismissal of the indictment, proper when the right to a speedy trial is denied, was nowise here warranted."

> *Judgment reversed; case remanded for trial; costs to be paid by appellee; mandate to issue forthwith.*