GILBERT GLENFORD DAVIS a/k/a Jimmie Johnson
a/k/a James Johnson v. STATE OF MARYLAND

[No. 458, September Term, 1974.]

*Decided February 18, 1975.*

The cause was argued before THOMPSON, MOYLAN, DAVIDSON and MASON, JJ.

*Geraldine K. Sweeney, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender* and *Frank Sacks, Assistant Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City* and *William Monfried, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

The Grand Jury of Baltimore City indicted the appellant for escape under the names Gilbert Glenford Davis, a/k/a Jimmie Johnson, a/k/a James·Johnson. After a jury trial in the Criminal Court of Baltimore which began on January 15, 1974, appellant was convicted and sentenced to a term of three years consecutive to the sentence he was then serving. He contends on appeal that the trial judge erred in failing to dismiss the indictment with prejudice under the provisions of Md. Code, Art. 27, § 616S, which require trial within 120 days of a prisoner's request in an intrastate detainer situation.

The record shows that on August 9, 1973, the Clerk's Office of the Criminal Court of Baltimore and the State's Attorney's Office for Baltimore City received by .certified mail (1) "Notice of Untried Indictments, Informations or Complaints and of Right to Request Disposition"; (2) "Inmate's Notice of Imprisonment and Request for Disposition of Indictments, Informations or Complaints"; and (3) A "Certificate of Inmate Status" as required by the provisions of Md. Code, Art. 27, § 616S (a). All of these

papers were on appropriate forms used by the House of Correction and requested that the appellant's indictment for escape be finally disposed of. As shown above, the trial on the escape indictment did not begin within 120 days after the notices were received by the appropriate court and State's Attorney. We will therefore reverse the judgment of conviction and direct the indictment be dismissed with prejudice in accordance with § 616S (c).

The Court of Appeals in the recent case of *State v. Barnes*, 273 Md. 195, 328 A. 2d 737 (1974) took the occasion to review the statute involved herein in detail and succinctly pointed out its purposes at 743-744:

> "It has long been recognized that detainers for untried charges — whether interstate or intrastate in nature — may result in 'undue and oppressive incarceration.' Undue delay in the disposition of such detainers has been recognized as minimizing the possibility that a defendant incarcerated might receive a sentence at least partially concurrent with the term he is serving and that under the procedures widely practiced, the duration of his imprisonment may be increased and the conditions under which his confinement must be served greatly worsened because of the pendency of an additional charge against him and the potentiality of additional punishment. Similarly, it has been recognized that a long delay in the trial of the detainer charge may impair the ability of the accused to defend himself since he is often in a prison far removed from the place where the added offense allegedly took place, resulting in an impairment of his ability to keep apprised of the whereabouts of witnesses, and isolates him from the ready availability of the assistance of his counsel. It has even been stated that the pendency of such a detainer constitutes a serious impediment to the prisoner's ability to take maximum advantage of the institutional opportunities for

rehabilitation. *See Smith v. Hooey,* 393 U. S. 374, 378-380, 89 S. Ct. 575, 21 L.Ed.2d 607 (1969). *See also* Note, 77 Yale L. J. 767, 769-771 (1968); Note 18 Rutgers L. Rev. 828, 833-834 (1964). In some jurisdictions the pendency of such a detainer precludes the prisoner from eligibility for parole consideration; in others it excludes him from placement on work-release programs, and it has been known, because of the potentiality of escape, to cause the prisoner to be confined under more strict and harsh security measures than might otherwise be applicable to his case, except for the detainer on file.

"In an effort to ameliorate such conditions, which were found to 'produce uncertainties which obstruct programs of prisoner treatment and rehabilitation' and in order 'to encourage the expeditious and orderly disposition of such charges,' the General Assembly, by Ch. 627 of the Acts of 1965, enacted the Interstate Agreement on Detainer Act (codified as Art. 27, §§ 616A-616R) and complementary thereto, at the same session by Ch. 628, enacted our own version of an Intrastate Detainer Act (codified as Art. 27, § 616S)." (Footnotes omitted).

In that case, the Court determined that the Intrastate Detainer Act should be liberally construed to accomplish its purposes and affirmed the holding of this Court to that effect in *Barnes v. State,* 20 Md. App. 262, 315 A. 2d 117 (1974).

In light of the Court of Appeals' decision in *Barnes,* it is our holding in the instant case that as soon as the appropriate court and State's Attorney's Office have received notices of the prisoner's request for disposition in proper form, the 120 day period within which the case must be tried begins to run and the indictment must be dismissed with prejudice when the trial is not begun within the 120 days except where the record shows that a necessary or

reasonable continuance has been granted by the court in compliance with § 616S (a) of the statute.

The State has advanced four arguments in support of its contention that the statutory remedy of § 616S (c) should not be invoked.

The first contention is that the case was properly continued under the statute on two occasions in September and November of 1973 and therefore under the provisions of Art. 27, § 616S dismissal was inappropriate. The statute provides as follows:

"(a) *Request by prisoner; statement from warden having custody.* — Whenever the Department of Correction receives a detainer against any prisoner serving a sentence in any correctional institution under the jurisdiction of the Department or whenever any county or city jail receives a detainer against any prisoner serving a sentence in the county or city jail any such prisoner shall be brought to trial within 120 days after the request of the prisoner for final disposition of the indictment, information, or complaint has been delivered to the State's Attorney of the City of Baltimore or of the county in which the indictment, information, or complaint is pending and to the appropriate court; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be filed within 30 days of the prisoner's notification of any untried indictment, information, or complaint and shall be accompanied by a statement from the warden or superintendent having custody, setting forth the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the date of parole eligibility of the prisoner, and any decisions of the

Board of Parole and Probation relating to the prisoner. The written notice and statement provided herein shall be delivered by certified mail.

"(b) *Duty to inform prisoner.* — The warden, superintendent or county or city law enforcement officer having custody of the prisoner shall inform the prisoner within 15 days in writing of the source and contents of any untried indictment, information, or complaint against said prisoner concerning which the warden, superintendent or county or city law enforcement officer has knowledge, and of the prisoner's right to make a request for final disposition thereof.

"(c) *Dismissal when action not commenced.* — If action is not commenced on the matter for which request for disposition was made, within the time limitation set forth in subsection (a) above, the court shall no longer have jurisdiction thereof, and the untried indictment shall have no further force or effect; and in such case the court shall enter an order dismissing the untried indictment with prejudice."

It is the State's argument that the trial judge correctly found that the case was properly continued on each of the above occasions because the State showed that a courtroom was not available and because there was confusion in the State's Attorney's Office because of the appellant's use of two names, *i.e.,* Gilbert Davis and James or Jimmie Johnson. The finding that the courtroom was unavailable was based upon the unsworn testimony of the Assistant State's Attorney in argument on the appellant's motion. While we do not at this time pass upon the unavailability of a courtroom as a proper reason to continue a case, it is apparent that the bare statement of a State's Attorney in argument on a motion to dismiss is not adequate to show that such a situation did in fact exist. *Dennett v. State,* 19 Md. App. 376, 383-384, 311 A. 2d 437 (1973), *cert. denied,* 3/18/74, 271 Md. 734. The record indicates neither appellant

nor his attorney was present when the continuances were granted as required by the statute. Thus the continuances, for this reason alone, cannot be invoked to avoid the application of the statute.

The confusion in names requires some explanation. The trial record shows that the appellant had been indicted under the name of Jimmie Johnson for a narcotics violation and that he had escaped from the Baltimore City Jail while waiting trial on that charge. When apprehended, he produced a driver's license and registration card bearing the name of Gilbert Davis. The police officer to whom he presented the documents was not deceived. The officer said he knew the appellant's correct name was Jimmie Johnson and that this was confirmed by fingerprints. The officer had applied for a warrant in the name of Jimmie Johnson but for some unknown reason the District Judge had issued the warrant under the name of Gilbert Davis, a/k/a Jimmie Johnson. To complete the scenario, the indictment was drawn up in all of the names recited above: Gilbert Davis, a/k/a Jimmie Johnson, a/k/a James Johnson. It appears that the appellant wrote several letters to the Chief Judge of the Supreme Bench of Baltimore and to the State's Attorney's Office requesting a speedy trial of his escape indictment. In those letters appellant used his real name, Jimmie Johnson. In the official notice invoking the Intrastate Detainer Act prepared by the warden the name Jimmie Johnson was also given, perhaps because that was the name under which appellant was imprisoned for the narcotic charge. In a letter to the State's Attorney's Office regarding the date of his trial, appellant used the names Davis and Jimmie Johnson. In any event the record clearly shows that the clerk of the Criminal Court wrote the correct indictment number on his copy of the official notice sent by and on behalf of the appellant and that at least one law clerk in the State's Attorney's Office was aware that the appellant was indicted under the several names. In a letter received by the appellant after he had signed the forms invoking the Intrastate Detainer Act, the aforementioned law clerk directed the appellant to correspond with the State's

Attorney's Office in the name of Davis. We are unable to see how the confusion over the appellant's name justified a continuance in the instant case. There is no evidence at all that the appellant intended to confuse the appropriate authorities in the procedure to invoke his rights under the act. More importantly, the record indicates that the State's confusion, if any, resulting from the several names, was minimal and self-inflicted in that the Clerk of the Criminal Court was able to relate the appellant's request to the appropriate indictment and at least one member of the State's Attorney's Office knew the indictment was in all three names and that the appellant at times used one of those names other than Davis. Indeed it seems appropriate and not unduly burdensome to require that where an individual is indicted under several names, a cross-index be kept for all the names so that cases can proceed with dispatch no matter under which of the names a communication with reference to the indictment may be received.

We hasten to add that our decision today should in no way be interpreted to allow a prisoner by the use of aliases and fictitious names to deliberately attempt to obfuscate the process of obtaining a speedy trial under the act in the hopes that the 120 day rule will be violated. We hold that in an appropriate case, any intentional or even grossly negligent use of several names by a prisoner in communicating his request to the appropriate authorities would be sufficient cause to deny him the benefit of the Intrastate Act. No such inferences can be drawn in the instant case.

The State next contends that the indictment should not be dismissed because the record shows that either the warden did not give notice to appellant within fifteen days as required by the statute, § 616S (b) or that the appellant did not make his request in thirty days as required by § 616S (a). The record in this respect is not entirely clear. The record shows the detainer was placed against the appellant on May 25, 1973. The appellant testified he was notified of the detainer at that time. He later testified that it was not until June that he was given the proper written notice and

that his requests were not typed up until July 26 because of the illness of the typist at the House of Correction. It was on this basis that the trial judge found as fact that either the warden had failed in his duty to notify the prisoner within fifteen days or that the prisoner had not filed his notice with the warden within thirty days as required by the statute. Regardless of the factual situation, we hold that the fifteen and thirty day time periods indicated in the statute are directory rather than mandatory. We note that although a State's Attorney can at any time proceed on the trial of an indictment against a prisoner incarcerated in Maryland, he can proceed on a trial with reference to a prisoner incarcerated in another State only with the consent of appropriate authorities in that State. Yet the statute governing Interstate Detainers, Md. Code, Art. 27, § 616D, gives no time limit on such notices with reference to a prisoner incarcerated out of State. We think that in incorporating such provisions in the statute which applies to Maryland officials and prisoners, the legislature was simply directing those officials and prisoners to proceed with due diligence rather than indicating that those time limits were crucial.

Our conclusion that the time periods are directory rather than mandatory is supported by the rule of statutory construction that provides that the use of the words "shall" or "may" are not in and of themselves controlling in determining whether a statute is mandatory or directory and that the intent of the legislature as gathered from the nature of the subject matter and the purposes to be accomplished is the controlling factor. *Director v. Cash*, 269 Md. 331, 344, 305 A. 2d 833 (1973); *Hitchins v. City of Cumberland*, 215 Md. 315, 323, 138 A. 2d 359 (1958). More importantly in this regard it has been held that where, as in the instant case, a statute provides no penalty for failure to act within the time period prescribed, the time period is directory. *Director v. Cash, supra* at 345. *See Snyder v. Cearfoss*, 186 Md. 360, 370, 46 A. 2d 607 (1946). Other than the sanction of dismissal for failure to prosecute within 120 days, § 616S provides no penalties for non-compliance with

its stated time periods. In *King v. State,* 5 Md. App. 652, 662, 249 A. 2d 468 (1969) this Court discussed that fact and stated:

> "Thus the Act assumes that all parties concerned will do what its provisions call upon them to do but it provides a sanction for failure to do so in only one instance, i.e., when the prisoner is not brought to trial within the time limitation after his request and the warden's statement have been delivered to the appropriate State's attorney and court. But the court does not lose jurisdiction and the indictment still has force and effect and shall not be dismissed with prejudice for any other failure to comply with the provisions, not only on the part of the prisoner but also on the part of the State's authorities."

The State argues that this Court arrived at a contrary decision in *King v. State, supra.* In *State v. Barnes, supra,* the Court quoted at length from *King* as follows:

> " 'The evidence did not establish that the appellant made request for final disposition of the untried complaints within 30 days of notification of them. The Act was not available to the appellant for that reason. Even on an assumption that the letter of 15 September 1967 was such request, and that it was filed on time, it was not accompanied by a statement from the warden containing the information required by the Act. The Act was not available to the appellant for that reason. And even if the evidence before the court be considered as showing that the appellant was precluded from filing the request as required because the warden, although he had knowledge, did not inform the appellant of the source and contents of the untried complaints and of the appellant's right to request final disposition thereof, [Footnote omitted] no relief was available to the appellant under the Act. And even had the evidence proved that the appellant made request as required but that the

warden failed to deliver it, accompanied by the statement, to the appropriate State's attorney and the court, no relief was available to the appellant under the Act. In short, for reasons we have hereinbefore stated, *since it was not established that the appellant and the prison officials did all that they were called upon to do by the provisions of the Act, the Act was not invoked, no matter where the fault lay.*' (Emphasis supplied.) 5 Md. App. at 665-66, 249 A. 2d at 476-77." *State v. Barnes,* 273 Md. 195, 328 A. 2d at 742-743.

We think by its emphasis on the last sentence in the above quote and by its use of the express language, "we thus see no incompatability between the holdings in *King v. State, supra* and the results reached in this respect by the Court of Special Appeals [in *Barnes v. State, supra*], 273 Md. 195, 328 A. 2d at 745, the Court of Appeals indicated that the holding in *King* was limited to those situations in which there has been an utter disregard for the statutory procedure and that *King* therefore should not be construed to require a strict construction of § 616S. In addition, the Court went on to point out that neither *Gibson v. State,* 17 Md. App. 246, 300 A. 2d 692 (1973) nor *Carter v. State,* 15 Md. App. 242, 289 A. 2d 837, *cert. denied,* 266 Md. 734 (1972) nor *Davidson v. State,* 18 Md. App. 61, 305 A. 2d 474, *cert. denied,* 269 Md. 757 (1973) was authority for strictly construing the statute. In *Gibson* and *Carter* we refused to invoke the statute where no detainer had been filed. In *Davidson* we held the statute inapplicable where the appellant at the time he attempted to invoke the act (interstate) was awaiting trial in a Delaware prison and had not entered upon a "term of imprisonment" as required for the application of § 616D (a). In all of the cases including *King* we pointed out the manifold instances where the statutory procedure had not been properly followed. In none of those cases did we hold that a prisoner would be deprived of his rights under the statute simply because the warden had failed to act within fifteen days or because the prisoner had failed to act within thirty days. We

reiterate our holding in the instant case that the time in which the warden is to notify the prisoner and the time in which the prisoner is to notify the warden of his request for a trial under the terms of the statute are directory only. Thus it would appear that the results as well as the language of our prior opinions are consistent with the holding herein even though an isolated sentence taken out of context may at times be misleading.

When both the appropriate State's Attorney's Office and the appropriate court have received notice of the intention of a prisoner to invoke the Intrastate Detainer Act, accompanied by the appropriate documents required by the statute, we see no excuse, other than those provided in the Act, for the officials to fail to comply with an act which was passed by the legislature of Maryland now some nine years ago. We, therefore, reverse the judgment of conviction and remand the case for dismissal of the indictment with prejudice in accordance with this opinion. In view of our decision we do not reach the other question raised by the appellant.

> *Judgment reversed.*
> *Case remanded for further proceedings.*