# PAUL HOLMES BEY, JR. *v.* STATE OF MARYLAND

[No. 1103, September Term, 1976.]

*Decided June 14, 1977.*

The cause was argued before THOMPSON, DAVIDSON and MOORE, JJ.

*W. Stanwood Whiting, Assigned Public Defender,* for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Wehland, State's Attorney for Howard County,* and *Dwight S. Thompson, Assistant State's Attorney for Howard County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Paul Holmes Bey, Jr., the appellant, was convicted by a jury in the Circuit Court for Howard County, Judge James Macgill presiding, of daytime breaking and entering and grand larceny. He was sentenced to concurrent terms of seven years on each count. On this appeal, he contends that the charges against him should have been dismissed because of the failure of the State to bring him to trial within the dictates of the Intrastate Detainer Act, Art. 27, § 616S,[1] and

1. Md. Code, Art. 27, § 616S (1976 Repl. Vol.) provides that:
"(a) *Request by prisoner; statement from warden having custody.* — Whenever the Department of Correction receives a detainer against any prisoner serving a sentence in any correctional institution under the jurisdiction of the Department or whenever any county or city jail receives a detainer against any prisoner serving a sentence in the county or city jail any such prisoner shall be brought to trial within 120 days after the request of the prisoner for final disposition of the indictment, information, or complaint has been delivered to the State's Attorney of the City of Baltimore or of the county in which the indictment,

that the trial court erred when it allowed the jury to hear a tape recording containing irrelevant and prejudicial material of the police interrogation of the appellant, without prior judicial review outside of the jury's presence.

The testimony adduced at a pretrial hearing on a motion to dismiss the criminal information, on the grounds that the appellant had not received a prompt trial under the Intrastate Detainer Act, showed that the appellant escaped from the Maryland House of Correction, where he had been confined, on August 19, 1975. On August 30, 1975, he was arrested in Howard County on the charges which are the subject of this appeal. On November 17, 1975, the appellant received at the Maryland House of Correction a warrant for his arrest served by the sheriff. He contacted his classification counselor at the institution, informed him of the warrant, and requested a fast and speedy trial on these

---

information, or complaint is pending and to the appropriate court; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be filed within 30 days of the prisoner's notification of any untried indictment, information, or complaint and shall be accompanied by a statement from the warden or superintendent having custody, setting forth the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the date of parole eligibility of the prisoner, and any decisions of the Board of Parole and Probation relating to the prisoner. The written notice and statement provided herein shall be delivered by certified mail.

\* \* \*

"(c) *Dismissal when action not commenced.* — If action is not commenced on the matter for which request for disposition was made, within the time limitation set forth in subsection (a) above, the court shall no longer have jurisdiction thereof, and the untried indictment shall have no further force or effect; and in such case the court shall enter an order dismissing the untried indictment with prejudice."

Acts 1976, Chapter 653, effective July 1, 1976, amended § 616S. Inasmuch as the effective date of the amendment is subsequent to the date on which the motion to dismiss was filed, the new act appears to have no application to the case at bar. In addition, there would be no difference in our opinion under either statute; both require that the appropriate court and State's Attorney receive a written request before the 120 day time limit begins to run. We note the new statute does require the dismissal of an indictment, information, warrant or complaint if the prisoner is not notified of his rights under the statute within one year after a detainer is filed. Another significant difference in the statutes is that under the new statute the dismissal is *without* prejudice instead of *with* prejudice.

charges. The counselor filled out the appropriate forms and gave them to his clerk. He informed her to have the appropriate forms typed up and after all the forms were typed to return them to him. When the clerk obtained the inmate status form, however, she noticed that the appellant had been taken in for an arraignment. Mistaking this arraignment to apply to the charges in the instant case, she did not complete the forms. Some time the next April, counsel for the appellant inquired as to the whereabouts of the request for the speedy trial forms. At that point the counselor discovered that no action had been taken. A motion to dismiss under the Intrastate Detainer Act was filed on May 28, 1976, and the matter was called for trial on the 6th of June, 1976. A request for continuance was granted in open court and this hearing on the motion to dismiss was held on September 27, 1976.

In *King v. State*, 5 Md. App. 652, 662, 249 A. 2d 468 (1969), this Court outlined the procedures required for invocation of this Act. It said that the court shall lose jurisdiction and the indictment shall have no further force or effect if the prisoner is not brought to trial within the time limitation, which commences after his request and the warden's statement have been delivered to the appropriate State's Attorney and court. The court, however, does not lose jurisdiction and the indictment still has force and effect and shall not be dismissed for any other failure to comply with the provision, not only on the part of the prisoner but also on the part of the authorities. In that case we foresaw the problem which arose in the case at bar when we stated:

> "We can only determine the legislative intent to have been that the prisoner file the request (no particular form is necessary) with the warden within 30 days of the prisoner's notification of the indictment and that it is the warden's obligation to prepare the statement and to deliver it by certified mail to the appropriate State's attorney and court. We recognize that by this construction there is no time limitation within which the warden is to so deliver the request and statement and that the time

limitation within which the prisoner must be brought to trial dates from the time his request is delivered to the State's attorney and court. Thus the prisoner may be precluded from invoking the Act by the failure of the warden to deliver the request as required for no sanction is provided by the statute for such failure. While we may construe statutes within the legislative intent, we cannot enact legislation and we may not presume a sanction when none is provided." (Footnote omitted). *Id.* at 659-660.

*See also Davis v. State,* 24 Md. App. 567, 575, 332 A. 2d 733 (1975), where the thirty day time period in which the correctional institution is to notify the appropriate authorities was found to be directory rather than mandatory.

In *State v. Barnes,* 273 Md. 195, 328 A. 2d 737 (1974), the Court of Appeals said that *King v. State, supra,* did not mandate that the provisions of § 616S be strictly construed. It added that it was not suggesting that a liberal construction, to effectuate the purposes of the statute, should absolve proof by competent evidence of those conditions precedent necessary for bringing the provisions of the statute into play. The conditions precedent necessary to bring the provisions of the statute into play are the knowledge by the prisoner of the nature and content of the filed detainer and the delivery of his request to the State's Attorney and the appropriate court in the jurisdiction where the charge is pending. It further stated at 273 Md. 209 that it saw no incompatibility between the holding in *King v. State, supra,* and the result reached in that case. The Maryland cases dictate our holding; there is no need for us to consider out of state cases under the Interstate Act. These cases apply different statutes than exist in Maryland, even though the Act is denominated "Uniform." [2]

Following the mandates of *State v. Barnes, supra, King v. State, supra,* and *Davis v. State, supra,* we hold that the

---

[2.] *See* Code, Article 27, § 616R of the Interstate Act.

statutory period of 120 days did not begin to run until the appropriate court and State's Attorney were notified of the appellant's intention to invoke his rights under the Intrastate Detainer Act. While it is not clear exactly when the State's Attorney and appropriate court were first informed of the invocation of this Act, it was within 120 days of the continuance which stayed the proceedings. *See also Isaacs v. State,* 31 Md. App. 604, 358 A. 2d 273 (1976); *Wise v. State,* 30 Md. App. 207, 351 A. 2d 160 (1976) and *Gardner v. State,* 29 Md. App. 314, 347 A. 2d 881 (1975).

## *Tape Recordings*

During the course of the trial, the State sought to introduce a statement made by the appellant while in custody. At this point, the trial judge dismissed the jury and heard evidence concerning the voluntariness of the statement. It was determined that the statement was voluntary. After the jury was reconvened, the State sought to introduce a tape recording of the appellant's statement. The defense objected to the admission of the tape on the basis that the court and the two attorneys should hear the tape out of the presence of the jury in the event certain material in the tape was inadmissible. The trial court questioned whether either side had heard the tape recording. Both counsel replied in the negative, although both had read a summary of the tape. The trial court stated that he did not know what was on the tape but that he would advise the jury to disregard the improper material. The tape was then played to the jury.

Appellant contends that where the admissibility of a taped interrogation is an issue, the trial court is obliged to exclude the jury and play the tape out of its presence, in order to give counsel the opportunity to interpose appropriate objections and delete those portions which are prejudicial and inadmissible.[3]

---

**3.** It is well established that a tape recording is admissible in evidence, if a proper foundation is laid. Raimondi v. State, 265 Md. 229, 232, 288 A. 2d 882 (1972), *cert. denied,* 409 U. S. 948; McGuire v. State, 200 Md. 601, 606, 92 A. 2d 582 (1952), *cert. denied,* 344 U. S. 928, 73 S. Ct. 497, 97 L.Ed.2d 714 (1953); Tumminello v. State, 10 Md. App. 612, 272 A. 2d 77 (1971); Lynch v. State, 2 Md. App. 546, 236 A. 2d 45 (1967), *cert. denied,* 249 Md. 732 (1968).

The Maryland courts seem not to have considered the specific argument of the appellant, but his general proposition is supported by the language of a number of cases. In *Wright v. State,* 38 Ala. App. 64, 79 So. 2d 66 (1954), it was stated that the trial court should first have the recording played out of the presence of the jury so that counsel would be afforded the opportunity at that time to interpose the appropriate objections. This procedure was found necessary to insure the accused of the protection of his rights under our criminal system. *See also Leeth v. State,* 94 Okl. Cr. 61, 230 P. 2d 942 (1951); *Lamar v. State,* 258 Ind. 504, 282 N.E.2d 795 (1972) and *Mayor and Aldermen of the City of Savannah v. Palmerio,* 135 Ga. App. 147, 217 S.E.2d 430 (1975).[4]

We fully agree that counsel should have an opportunity to object to improper portions of the tape, but we are reluctant to lay down a rule requiring a trial judge, in every case, to listen to the tapes outside of the jury's presence. We note that there is support for a rule that does not require the trial judge to listen to the tapes if counsel have been given an opportunity to hear or read a transcript thereof prior to the beginning of the trial, so that they can properly formulate objections, if any they have, to particular portions thereof.[5] *See Flannagin v. State,* 289 Ala. 177, 266 So. 2d 643, 650 (1972) and *State v. Chappell,* 83 N. M. 63, 488 P. 2d 113, 115 (1971). We think this modified rule is eminently fair and suggest that State's Attorneys arrange for counsel and/or the accused to listen to tapes in advance of the trial.

In the case at bar, defense counsel stated that he had not had an opportunity to review the tape recording; therefore, he raised objections to the admissibility of portions of the

---

While recordings are prone to abuse, distortion, tampering and other infirmities, they are of substantial evidentiary value when their use is properly safeguarded. These safeguards are established by presenting the proper foundation necessary for the introduction of the sound recording. Corbi v. Hendrickson, 268 Md. 459, 466-467, 302 A. 2d 194 (1973); 58 A.L.R.2d 1024 (1958).

4. Appellant cites four other cases which tend to support his argument but these cases do not discuss the question as fully as those we have cited.

5. Obviously, the trial judge may have to listen to portions of the tape to rule on objections.

tape and requested an opportunity to hear it outside the presence of the jury. The trial judge was in error in not granting this request. We do not consider the error reversible, however, for a number of reasons.

In the beginning of the tape it was developed that the appellant was an escapee, to which there was no objection below and thus the question is not before us under Md. Rule 1085.[6] The next question on the tape was, "What was the charge?" An objection was posed to this question and the answer was not played to the jury. Thereafter, it was brought out that the appellant had taken twelve bags of heroin at about 9:30 in the morning of the day he was being questioned. The appellant argues on appeal that his drug addiction was not admissible.[7] On the contrary, in this context it was admissible for the purpose of determining the voluntariness of the statement and was most relevant. *Dempsey v. State*, 277 Md. 134, 152, 355 A. 2d 455 (1976). The tape then showed that the appellant was advised fully as to his constitutional rights and agreed to make a statement and did sign his name to the waiver of rights form. After having done this, the appellant volunteered:

> "Well, this — there's really nothing to tell. You know. I — I'm a drug addict and I'm addicted to heroin and I've got a big habit, and I need money."[8]

He then was asked if the twelve bags he had taken were sufficient to last him for the day. He said that he would probably need about twelve more, which he would purchase if he had the money, and his supplier was a man on Wolfe Street whom he did not know "personally." The next portion

6. In addition, appellant had waived objection to this evidence by bringing out on cross-examination of Officer Allen Hafner, Jr. that the appellant was an escapee. *See* Peisner v. State, 236 Md. 137, 144, 202 A. 2d 585 (1964), *cert. denied*, 379 U. S. 1001.

7. This evidence had also been previously elicited by the appellant on cross-examination of Officer Hafner and thus any objection was waived. Peisner v. State, *supra*.

8. Of course, evidence of other crimes is admissible to prove the specific crime charged when such evidence tends to establish motive. Ross v. State, 276 Md. 664, 669, 350 A. 2d 680 (1976) and Chandler v. State, 23 Md. App. 645, 649, 329 A. 2d 430 (1974).

of the tape concerns questioning as to why the appellant was in Howard County and why he was in the presence of the alleged accomplice. On appeal, but not below, appellant alleges that subsequent questions asking the appellant if he had been involved in other burglaries in the area were prejudicial. We do not see it that way. The appellant denied his involvement in any of the crimes and there was nothing to show otherwise, except the questions themselves, which under these circumstances are not improperly suggestive. At the end of the tape the interrogating officer suggested that if the appellant were to assist in solving other crimes it could be beneficial to him. Again the appellant denied any involvement and said he was unable to furnish any additional information.

The reasons we have given are entirely adequate to show that the error is not reversible error, but, in addition, the appellant was caught by the officers in the victim's living room after he had been observed in an attached garage. His fingerprint was on the door knob near the broken windowpane in the kitchen door which was the point of entry. Some of the victim's property had been loaded in the accomplice's automobile which had been parked inside the victim's formerly locked garage. If there is ever a case where we can declare beyond a reasonable doubt that the alleged inadmissible evidence did not contribute to the verdict, it is this case. *See Dorsey v. State,* 276 Md. 638, 659, 350 A. 2d 665 (1976).

> *Judgments affirmed.*
> *Appellant to pay the costs.*