ALFRED DONNELL HUGHES *v.* STATE OF MARYLAND

[No. 133, September Term, 1979.]

*Decided October 18, 1979.*

The cause was argued before LOWE, MASON and COUCH, JJ.

*Nancy Louise Cook, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Peter Semel, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The primary question raised by appellant is whether the denial of an oral motion for a trial date change offered on day of trial denied appellant his right to counsel of his own choosing. The question is couched designedly to emphasize what is urged as a denial of a constitutional right, and as well, to permit peripheral arguments to be interwoven as support for his position. One such peripheral contention which might well have given pause independently is that he was improperly denied the right to be present when his attorney addressed the motion for continuance to the administrative judge.

The record indicates that appellant, whose charges included kidnapping and assault with intent to murder, was provided

a public defender (Earl Carey) whose appearance was entered on May 22, 1978, according to the docket of the Criminal Court of Baltimore. Perhaps because Carey also represented a codefendant, the docket entries show that a panel attorney, Michael S. Libowitz, assigned by the Public Defender, entered his appearance on appellant's behalf on July 7, 1978. On September 13, 1978, the cases of appellant and his codefendant were called for trial.

While the court was disposing of preliminary motions (which included a demand for speedy trial) prior to commencing the case, the codefendant personally and vociferously expressed dissatisfaction with his attorney and asked to defer trial in order to obtain new counsel. Appellant's attorney then arose and advised the court that on that very morning he had been advised that appellant's family had contacted private counsel, Mr. Howard Cardin, who had (also that morning) contacted Mr. Libowitz. Mr. Libowitz verified this retention through appellant's mother and appellant, who indicated a preference "to be represented by Mr. Cardin who is the choice of his family." Mr. Libowitz then joined the codefendant's request for postponement, to permit Mr. Cardin to be formally retained and to prepare his case.

Because Md. Rule 746 b restricts that decision to administrative judges (or their designees) only, the trial judge proposed to recess the proceedings and permit counsel to journey through the Baltimore City courthouse to Administrative Judge Robert L. Karwacki's chambers where they could obtain a postponement only if they should convince him that the cause for delay was "extraordinary". Md. Rule 746 b states:

> "Upon motion of a party made in writing or in open court and for extraordinary cause shown, the county administrative judge or a judge designated by him may grant a change of trial date."

Before leaving, appellant's appointed counsel proposed that appellant be permitted to join him. He did not suggest that appellant could contribute to the deliberation of Judge Karwacki. Instead he rested his demand on the premise that

the right to be present at that stage of the trial was an absolute, presumably because the underlying purpose for which the change of trial date was being sought made it a "critical" stage.

"MR. LIBOWITZ: Your Honor, on the record, since — before my client is taken away, I think, as far as my client is concerned, postponement request is certainly a critical stage in the proceedings against him. It has been indicated, the family has indicated that at this time they are financially able to secure private counsel of their own choice and desirous of same. I would ask that my client be in a position to be present during any postponement request before the administrative judge."

The trial judge declined to decide the presence question and left it to the administrative judge who would decide the ultimate postponement question. The record indicates some concern by the trial judge as to whether the defendant, charged with brutally violent crimes, could safely be transported from area to area in a crowded courthouse. He initially deferred to the security officers, but finally left the decision to the administrative judge.

"THE COURT: I'm going to leave that up to the jail guard.

MR. CAREY: I would make the same motion for similar reasons on behalf of my client.

THE COURT: I'm going to leave that up to the jail authorities and you may make that request to Judge Karwacki when you appear before him; see what he says."

We are thereafter deprived of any record of proceedings of what transpired before the administrative judge, although his conclusions were reported to the trial judge by the Assistant State's Attorney.

"MR. SEMEL: Your Honor, Judge Karwacki denied the postponement. Mr. Libowitz and Mr.

Carey and myself met with him about fifteen, twenty minutes ago. The situation was made known to him. He denied both postponements requests by both Defendants and ordered that the case proceed to trial today. He also denied a motion made by Mr. Carey, Mr. Libowitz to have the Defendants present at the hearing of the request and on the postponement issue."

We can assume the State protested vigorously to Judge Karwacki, opposing this last minute delay just as it had before the trial judge when the issue was first raised,

"MR. SEMEL: Your Honor, it's obvious to the State that both Defendants are employing what I would call dilatory tactics in these particular cases. Both Mr. Carey and Mr. Libowitz have been in these cases for at least three, four, five months to my knowledge. They have been in communication with me, provided discovery matters, they have been to my office, they're both fully prepared for trial, everything has been given to them that they asked.

The Defendants come in here today and they're trying to get a delay for whatever reasons they have in their own particular cases. The State has gone to great expense to get this case ready for trial today. There is an out of state witness flying in from Texas who will be here today. There is [sic] numerous detectives involved in this case, uniformed patrolmen who are all working various shifts, crime lab technicians, at least twenty-twenty-five witnesses, Your Honor. The State would object strenuously to any ridiculous tactic by Defense at this time. Both Mr. Libowitz and Mr. Carey are capable, experienced criminal attorneys and State is prepared to go to trial today and it wants to go to trial today."

but we are faced with a practical dilemma in the absence of a record of what transpired in Judge Karwacki's chambers. We do not know whether Judge Karwacki declined to have

the defendant present for security reasons, or whether his decision was arbitrary. We do not know what considerations were left before his honor in determining whether extraordinary cause existed under the "facts and circumstances of [this] case."[1]

> "Determining what constitutes 'extraordinary cause' under Rule 746 is, of course, dependent upon the facts and circumstances of each case." *State v. Hicks,* 285 Md. 310, 319 (1979).

— extraordinary cause —

In the abstract one could hardly argue that a *propitious* exercise of one's right to counsel may have been cause for delay sufficiently extraordinary to warrant a change in trial date, and sufficiently critical to require the accused's presence when that determination was made. That an attorney being discharged would be adequate counsel to advocate his own dismissal out of client's presence and to ask for a postponement to allow his successor to prepare, is reasonably incongruous. But there are other considerations inferably available against which the abstract right-to-counsel argument may fall. One such consideration involves appellant's demand for speedy trial that was still pending, as pointed out by the trial judge. This was itself a constitutional right standing in the way of further delay:

> "I might say to both of these young men, there has been a Motion for Speedy Trial on behalf of both of them. If their cases are postponed, you might have critically affected your rights to a speedy trial, both of you, and you might have some difficulty asserting that you were denied a speedy trial if the case is postponed at your request."

---

1. For example, in Guarnera v. State, 20 Md. App. 562 (1974), a defendant's last minute request to change attorneys was not "extraordinary"; whereas, in Copeland and Covington v. State, 27 Md. App. 397 (1975), a different factual basis, where new counsel was promised, warranted a delay to obtain such new counsel and thus was cause extraordinaire.

704

Another consideration inferably available is appellant's timing in his request to change to another lawyer. Appellant had been provided counsel by the State, as noted, obviously pursuant to Md. Rule 723 b 5. This had to be done at his request and, indeed to qualify, his impecunious status had to be attested by him before a public defender was appointed. At this stage he had asserted his right to counsel and had elected to accept one designated, and paid for, by the State. In such instance a defendant is not entitled to appointment of counsel of his own choice, but only to such counsel as may be assigned. But such appointment, once made at the behest of appellant, fulfilled the constitutional guarantee so long as the counsel assigned afforded appellant a genuine and effective legal representation under all the circumstances of the case. *English v. State,* 8 Md. App. 330, 334-335 (1969).

At no time did appellant express any dissatisfaction directly or through counsel. He was personally silent throughout, depending on his assigned counsel who was the conveyor of appellant's preference to defer to his family's last hour obtainment of private counsel. When a defendant requests and receives appointed counsel and acquiesces in his representation up to the very point of jeopardy attaching, and even then does not object to such representation, his conduct approaches a waiver of the exercise of a preference for another lawyer subsequently selected and paid for by his family. *Cf. Baker v. State,* 35 Md. App. 641, 642-643 (1977).

Had appellant hired counsel at the inception and continued with him to the trial date, his circumstance would have been the same had he then come in to request postponement to change to another lawyer recommended by his family. This issue then is not whether appellant was denied a right to counsel, or even to counsel of his choice. Rather the question remains procedural — whether the circumstances are so extraordinary that the trial should be rescheduled to convenience appellant's belated hindsight. A justifiable substitution of counsel may be accommodated. An initial exercise of one's right to counsel must be; but here, appellant had already exercised his initial right to counsel, even of his choice, when he chose to accept the public defender. To permit

a change was, at best, within the statutorily limited discretion of the court.

It is obvious that the merits in the exercise of the discretionary right to deny a continuance to change lawyers are inexorably interwoven with the merits of an accused's right to be present when the decision is made. Just as the timing of the request may inferentially cause suspicion of the real purpose (*i.e.,* that appellant is using it as an "artifice or stratagem" to delay trial, see *Brown v. State,* 27 Md. App. 233, 238 (1975)), such timing may for security, or other reasons, foreclose appellant's right to be present in the absence of a proffer that his presence could contribute to the merits of the motion. Under the limited circumstances available to us in this case, appellant's requested postponement was a procedural issue involving convenience to appellant. He has not shown that he was threatened with a loss of the right to representation, nor has he shown justification for belatedly changing his selection from a public defender to private counsel at the expense of interrupting the judicial process. But all of this is speculation upon what Judge Karwacki *may* have considered. Appellate courts should not so speculate.

— burden on appeal —

In an unofficial memorandum to prosecutors on "THE EFFECT OF *STATE V. HICKS* ON THE SCHEDULING AND POSTPONING OF TRIAL, PURSUANT TO MARYLAND RULE 746", the Attorney General, through his assistant, F. Ford Loker, Esquire, admonished prosecutors to see that, upon requesting delays, a proper record be made for use on appeal. His advice on what constitutes an adequate record is as applicable to defense counsel as to the prosecutors to whom it is addressed:

> "Establishing an adequate record means producing competent evidence, such as live witnesses and court records, as opposed to mere unstipulated proffers or argument.
>
> . . .

> Attorneys cannot afford to articulate arguments for or against a continuance in the judge's chambers, and forget to repeat their performance on the record."

As we have indicated there is no record here of what transpired before the administrative judge but for the statement of the Assistant State's Attorney indicating that neither postponement nor right to be present was granted. There is not even a docket entry to show either the request for continuance or to be present, or the disposition of either. As Mr. Loker also points out, this Court has expressly declined in another context to consider the merits of a factual assertion upon

> "unsworn testimony of the Assistant State's Attorney, in argument on [a] motion." See *Davis v. State,* 24 Md. App. 567, 572 (1975).

What's sauce for the goose is sauce also for the gander. If the State must make a record on motions' hearings, does not the same apply to an accused when the appellate burden is his? Here, we do not have even appellant's counsel's "unsworn statement" of facts existent as was in *Davis, supra.* There is nothing to review, not a record of a motion, not a ruling by the administrative judge, not even a docket entry. Appellate courts have always required *some* record of proceedings of an administrative nature before they will reverse an exercise of judicial discretion, and of late more and more clarity and detail is prescribed. The full burden of providing such record is placed upon "the aggrieved party, the party claiming abuse, to preserve his objection for review." *Langrall, Muir & Nopp'r v. Gladding,* 282 Md. 397, 401 (1978).

> "The Court of Special Appeals noted with particularity that the trial judge made no stenographic record nor did he outline his reasons for his action. Without question, the better practice for any trial judge when exercising his discretion under Rule 530 is to set forth the basis for his ruling

on the record, with unmistakable clarity, orally or by memorandum opinion. However, it is the responsibility of the aggrieved party, the party claiming abuse, to preserve his objection for review.

To reach any other conclusion would reduce the exercise of a court's discretion to a meaningless gesture. This we cannot allow to happen. Discretion is the warp and woof of judicial fiber."

Since what constitutes extraordinary cause is a question within the limited discretion of an administrative judge to be decided on a case by case basis, *Hicks, supra,* and see *Bethea v. State,* 26 Md. App. 398, 401 (1975), it is appellant's burden to provide us with a satisfactorily endowed record indicative of an abuse of that discretion, *Langrall, Muir & Nopp'r v. Gladding, supra,* and he has failed to do so. There is nothing to review. See *Lang v. Catterton,* 267 Md. 268, 274 (1972) and *Casson v. Joyce,* 28 Md. App. 634, 638 (1975).

This result is predicated upon the premise that the discretionary rulings of judges carry a "presumption of validity". *Mathias v. State,* 284 Md. 22, 28 (1978) (as does *Langrall, Muir & Nopp'r v. Gladding, supra),* cites a civil case which describes that principle.

"There is, of course, a presumption that the discretion vested in the trial court 'was not abused but was exercised with just regard to the rights and interest of both the plaintiff and the defendants,' . . . ." *I. W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 19 (1975).

— the right to be present —

Because appellant did not carry his appellate burden of providing evidence of record of greater persuasion than the presumption of judicial propriety, we will affirm. For the same reason, we will not reverse simply because appellant may not have been present in Judge Karwacki's chambers. Except for the "unsworn statement of the Assistant State's Attorney", upon which a foundation for appeal will not rest, see *Davis v. State, supra,* his presence or absence is not

ascertained aforesaid, but even if the record had so indicated, there was no right for appellant to be present at a conference on a preliminary procedural question of rescheduling. In light of our holding that appellant had been provided his right to counsel by the State, the issue of whether the rescheduling conference with the administrative judge was a critical stage of appellant's trial can be viewed in its procedural garb, stripped of its constitutional regalia.

Whether a defendant has extraordinary cause to delay a case may require some factual basis but it is primarily a conference on a question of law. If factual determinations required an evidentiary basis to reach a legal conclusion, appellant should have proffered this for the record and requested an evidentiary hearing in open court. Absent such proffer, the conference with the administrative judge relating to a change of trial date falls within the "question of law" exception to the rule.

This is in accord with our holding in *Redman v. State,* 26 Md. App. 241, 243 (1975), which indicated that a defendant's presence is not required

> "at a pretrial chambers conference between the judge and counsel concerning scheduling and other procedural matters, . . . ."

Judge Moylan pointed out in *Redman* that the theme running through the cases holding that presence is required is that

> "the trial is actually in progress and is moving forward through one of its necessary stages or that testimony which will ultimately become a part of the trial (as in *Collins* [*v. State,* 12 Md. App. 239 (1971), aff'd 265 Md. 70 (1972)] is being perpetuated." *Id.* at 244.

That was written in the spirit of the language of old Md. Rule 775, from which its more succinct successor emanated in the form of the present Rule 724.

> "*Rule 775. Presence of Accused.*
>
> The accused shall be present at the arraignment,

at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided in this Rule. The accused shall have the right to be present at the taking of a deposition taken at the instance of the prosecution. In a prosecution for an offense not punishable by death the defendant's voluntary absence after the trial has commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. The defendant's presence is not required at a reduction of sentence under Rule 764 (Revisory Power of Court), fixing of the date of execution in a capital case, or at a proceeding in an appellate court."

As parenthetically pointed out by Judge Eldridge in n. 1 of *Bunch v. State,* 281 Md. 680, 684 (1978), the requirements of the two rules for our purposes are identical. We can thus glean some meaning for the succinct successor from the verbosity of its progenitor.

More pertinently, however, the Court of Appeals had previously pointed out in *Veney v. Warden,* 259 Md. 437, 453-454 (1970), that such pretrial conferences on matters of a preliminary nature did not compel a defendant's presence:

"Petitioner's eleventh point, raised solely at the hearing on this petition, is that he was denied his right to be present at a pre-trial meeting at which the court and counsel reached agreement regarding certain procedures to be followed at trial. This allegation affords no basis for relief because no law, federal or state, provides that the right to be present at trial extends to conferences between the judge and counsel in chambers. *Martin v. State,* 228 Md. 311, 179 A.2d 865 (1962) (arguments of law); see *Brown v. Pepersack,* 217 F. Supp. 547 (D. Md. 1963), aff'd., 334 F.2d 9 (4th Cir.), *cert. denied,* 379 U. S. 917 (1964); *Brown v. State,* 225 Md. 349, 170 A.2d 300 (1961), *cert. denied,* 372 U. S. 960 (both dealing with

consideration of jury instructions). Nor does such right apply to matters which are purely preliminary in nature. *People v. Isby,* 30 Cal. 2d 879, 186 P.2d 405, 414 (1947). In the instant case, petitioner does not claim prejudice from any matter considered in the pre-trial meeting except the agreement to allow the jury to separate during trial. As already noted above, this matter is discretionary with the Court and under the facts in this case did not go the fairness of the petitioner's trial. Consequently, petitioner's absence from the session at which the agreement regarding separation was reached is not of constitutional dimensions. See *Snyder v. Massachusetts,* 291 U. S. 97 (1934)."

But all of this was pre-*State v. Hicks, supra,* 285 Md. 318. The holding in that case raised Md. Rule 746 to a height approaching constitutional proportions albeit acknowledging it to be a "nonconstitutional procedural rule."

"We deemed it essential, as is evident from the language of Rule 746, to place mandatory controls over the scheduling of criminal cases for trial, and over their postponement, to assure that criminal charges would be promptly heard and resolved. Rule 746 retains the 'extraordinary cause' standard of § 591 and former Rule 740 as the sole basis justifying a trial continuance, but it alters the triggering mechanism, and substantially reduces the time period, by and within which trials are to be scheduled. Additionally, the rule vests power in the county administrative judge to authorize other judges to grant continuances. The provisions of Rule 746 are of mandatory application, binding upon the prosecution and defense alike; they are not mere guides or bench marks to be observed, if convenient." *Id.* at 318.

— dicta —

Consequently, it would seem that an extraordinary cause hearing may be considered of such importance — especially with regard to the underlying purpose — that it would at the very least be sufficiently critical to require appellant's presence under Md. Rule 724 a.

> "The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these Rules."

We are apprised[2] that the Supreme Bench of Baltimore City has adopted the post-*Hicks* administrative policy of requiring *all* defendants to be present at *all* requests for scheduling change under Md. Rule 746. While this cumbersome procedure, which obviously causes security and other problems, is questionable, that court has taken *Hicks* as a warning flag, and chosen not to jeopardize future proceedings with technical oversights. Trial judges elsewhere, as surrounded as they all are with procedural pitfalls, are at liberty to follow that course, especially in postponement requests undergirded by assertions of constitutional rights, and err, if at all, on the side of caution. In light of the manipulative uses of rescheduling for tactical advantage, the consequence of misjudgment is numerically too grievous a burden to thrust upon judicial machinery by gambling that presence might not be required despite the implicit admonition gleaned from *Hicks. Hicks* is a warning indicative of the esteem in which the Court of Appeals regards its rules and the Legislature's enactments. Because of our *Young v. State,* 15 Md. App. 707, *aff'd,* 266 Md. 438 (1972), *Hicks* was a surprise. Once burned is to be twice wary.

— the trial —

Two additional questions submitted without argument are without merit. The first seeks to suppress a confession and

---

2. We assume that we are not compelled to feign lack of knowledge upon that which is administratively done within the judiciary. Such reasonable recognitions have been reported without comment by the Court of Appeals. Barry Properties v. Fick Bros., 277 Md. 15, n. 3 (1976).

other evidence by tainting it with the fruit of an illegal arrest, *i.e.,* one without probable cause. The foundation fails in that the record indicates probable cause to have existed sufficient to justify the arrest.

Finally, appellant's complaint of the admission of a photograph of an automobile purporting to have been shot is equally without merit as a result of an unjustified foundation. He contends that the photograph depicts a bullet hole which the witness admitted having probed and enlarged and, as a consequence, did not reflect accurately the purpose for which it was admitted, *i.e.,* to prove "the damage" caused by the firing of a gun. It was not the purpose to reflect the extent of damage, only that there was damage to the depicted area of the vehicle. The trial judge explained to counsel that it was not admitted to show the before probe condition. In fact, he agreed to keep the written legend on the photograph from the jury to avoid confusion, and permitted counsel to establish on cross-examination whatever he chose in regard to the picture. The judge did not abuse his discretion. *Sisk v. State,* 232 Md. 155, 157-158 (1963).

> *Judgments affirmed.*
> *Costs to be paid by appellant.*